UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| FRANKIE N. WALKER, SR., | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) No. 4:16-cv-04021-SLD |
| | ) |
| GREGORY SCOTT, Program Director at | ) |
| Rushville Treatment and Detention | ) |
| Facility, | ) |
| | ) |
|     Respondent. | ) |
| | ) |

## ORDER

Petitioner Frankie Walker, Sr., filed a petition for relief from his civil commitment to a secure facility in Illinois, pursuant to 28 U.S.C. § 2254, ECF No. 1. Respondent, the Program Director at Rushville Treatment and Detention Facility ("Rushville"), has filed an answer, ECF No. 17, asking that this court deny Walker's petition. Walker has filed a great number of motions since Respondent answered: a motion for extension of time to respond to the answer, ECF No. 22; a motion seeking an order to stay state-court civil commitment proceedings, ECF No. 24; another motion to this effect ECF No. 26; three more motions for extension of time to respond to the answer, ECF Nos. 27, 28, 30; a motion for status, ECF No. 31; another motion for extension of time to respond to the answer, ECF No. 32; two motions to receive "exact hard copies" of everything Respondent has filed in this matter, ECF Nos. 33, 34; a motion for leave to file a reply to Respondent's response to Walker's motion to stay state court proceedings, ECF No. 35; a motion for extension of time to serve discovery requests on respondent, and a request for leave to serve interrogatories on Respondent, ECF Nos. 36, 37; a motion to "secure the just and speedy

1

determination" of all of the pending motions, ECF No. 40; two motions for subpoenas, ECF Nos. 41, 42; and a motion asking the Court to take judicial notice of some appellate court records, ECF No. 43. For the following reasons, the court grants Respondent's request and DENIES Walker's petition. All of the remaining motions are MOOT.

## BACKGROUND[1]

In 1990, Frankie Walker raped an 18-year-old woman after he followed her when she got off a bus, a crime for which he got an eight-year sentence. Later, he two or three times sexually assaulted his wife's eight-year-old daughter, an act that he described as designed "to seek some measure of revenge because he believed his wife had been unfaithful." App. Ct. Order 7, Answer Ex. A, ECF No. 17-2. He received an 11-year sentence for this behavior.

In February 2007, Illinois filed a petition in Illinois circuit court seeking Walker's civil commitment under the Sexually Violent Persons Commitment Act ("SVPCA"), 725 ILCS 207/1–207/99. The petition, filed pursuant to 725 ILCS 207/15, alleged that Walker had pleaded guilty to the attempted predatory sexual assault of a child, and that he'd been diagnosed by a doctor, Ray Quackenbush, with a paraphilia that predisposed him to commit acts of sexual violence. It further alleged, based on Quackenbush's report, that Walker's mental disorder made it "substantially probable that he will engage in acts of sexual violence."

The trial court held a hearing pursuant to 725 ILCS 207/30, and determined that there was probable cause to believe that Walker was a sexually violent person within the meaning of the

---

[1] Pursuant to Rule 5(d) of the federal rules governing Section 2254 cases, Respondent submitted at this Court's Order briefs from Walker's state court proceedings, and orders of Illinois courts, including the order of the Illinois Appellate Court affirming the order committing Walker as a sexually violent person. App. Ct. Order, Answer Ex. A, ECF No. 17-2. The facts recounted here are taken from that Order unless otherwise indicated. Determinations of factual issues made by state courts from which habeas petitioners seek relief are presumed by reviewing federal courts to be correct. 28 U.S.C. § 2254(e)(1). This presumption applies to the findings of state appeals courts. *Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).

SVPCA. (The Act defines such a person as one who has been convicted of a sexually violent offense and who is dangerous because suffering from a mental disorder making further acts of violence substantially probable. *Id.* 207/5(f).) In April 2007, at Walker's request, the court appointed Ronald Baron, a doctor, as an expert to assist Walker. Another doctor, Raymond Wood, examined Walker on behalf of Illinois.

On July 8, 2008, Walker stipulated to being a sexually violent person. The judge questioned Walker in open court, asking if he had discussed the matter with his attorney, explaining the trial rights Walker was forgoing by stipulating, and asking whether Walker was entering into the stipulation freely. Walker waived all of his trial rights, and admitted to having been convicted of attempted predatory sexual assault in Lake County, Illinois in 2002. Walker further stipulated that if the case went to trial, Quackenbush and Wood would testify that Walker suffered from "Paraphilia, Not Otherwise Specified, Nonconsent (Dr. Quackenbush) and Paraphilia, Not Otherwise Specified, Sexually Attracted to Non-Consenting Females, Nonexclusive type, and Pedophilia, Sexually Attracted to Females, Nonexclusive Type (Dr. Wood)." App. Ct. Order 5. He further stipulated that Wood and Quackenbush would testify that these disorders made it substantially probable that he would engage in further acts of sexual violence. The court entered an agreed order committing Walker to the custody of the Illinois Department of Human Services ("IDHS") until he was no longer sexually violent.

In September 2008, the Illinois circuit court appointed Kirk Witherspoon, a doctor, to serve as Walker's expert in preparation for a dispositional hearing. Witherspoon prepared a report and sent it to Walker, who received it on March 31, 2009, and, the same day, moved to withdraw his stipulation, arguing that it had been based upon the reports of Quackenbush and Wood, in which he

3

now detected faults. The court denied Walker's motion, ruling that preferring Witherspoon's analysis to Wood's and Quackenbush's didn't amount to a showing of good cause to withdraw the stipulation. On July 16, 2009, Walker sought and was granted leave to proceed pro se, and filed several motions, including one attacking the effectiveness of his previous counsel. The motions were denied.

In March 2013, the Illinois circuit court conducted a dispositional hearing. Wood testified as an expert about his earlier examinations of Walker. Wood testified about the 1990 rape, and the later molestation of Walker's wife's daughter. He also testified that Walker had been arrested for 21 other offenses including robbery, domestic abuse, batteries, and violations of restraining orders. Wood testified about his diagnoses of Walker, as Walker had stipulated he would, and also testified that he'd diagnosed Walker with alcohol dependence, cannabis and cocaine abuse, and antisocial personality disorder with narcissistic features. He also indicated that in his last conversation with Walker, "[t]here was . . . evidence of sexual arousal to grammar- and adolescent-age females." App. Ct. Order 8. Wood explained that treatment options at a commitment facility would be superior to those available to Walker if he were released.

The court then considered three factors mandated by statute: the nature and circumstances of the behavior that had formed the basis of the petition for commitment, Walker's mental history and present mental condition, and the arrangements available to ensure that Walker would have access to and would participate in necessary treatment. *See* 725 ILCS 207/40(b)(2). The court noted Walker's two convictions for crimes involving sexual violence, his various mental disorders, the quality of treatment available at the commitment facility, and the fact that Walker hadn't voluntarily engaged in any treatment while he was incarcerated for the sexual assault of his

4

wife's daughter. The court found that Walker needed intensive treatment, and that the least restrictive environment in which he could receive such treatment was secure detention.

Walker appealed the order through counsel. Appelant's Br., Answer Ex. B, ECF No. 17-2. He raised eight issues: (1) that 725 ILCS 207/40 was unconstitutional because it did not allow him to demand that fact issues be determined by a jury and did not require proof beyond a reasonable doubt; (2) that the trial court had to but did not make a determination that confinement was necessary to prevent him from committing sex offenses in the future; (3) that the trial court shouldn't have accepted his stipulation, because stipulations aren't provided for by the SVPCA; (4) that the trial court took inadequate steps to make sure he understood the consequences of his stipulation; (5) that his attorney was ineffective in permitting him to enter into the stipulation; (6) that the trial court should have held a hearing pursuant to *Illinois v. Krankel*, 464 N.E.2d 1045 (Ill. 1984)[2]; (7) that the court should have held an evidentiary hearing on his motion to withdraw his stipulation; and (8) that the court should have held a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)[3]. App. Ct. Order 9–10. On September 26, 2014, the appellate court affirmed the trial court's order. App. Ct. Order 10–34.

Walker then petitioned, pro se, for leave to appeal to the Illinois Supreme Court. Pet. Leave Appeal, Answer Ex. E, ECF No. 17-3. He raised as issues on appeal: (1) that the trial court's acceptance of his stipulation had been without authorization in the SVPCA and had violated his constitutional right to due process of law, *id.* at 6–10; (2) that his attorney had been

---

[2] *Krankel* held that a defendant should have had counsel appointed, other than his originally appointed counsel, to represent him at a post-trial motion for a new trial where he argued that his initial counsel had been ineffective in failing to present an alibi defense. 464 N.E.2d at 1049.
[3] *Frye* was an early case dealing with the admissibility of expert testimony—specifically, the results of an examination purporting to measure truthfulness on the basis of blood pressure. 293 F. at 1014. *Frye* announced a rule that scientific procedures must "be sufficiently established to have gained general acceptance in the particular field," *id.* at 1014, before a court will admit them. Although the rule is in some tension with the Federal Rules of Civil Procedure, some circuits, including the Seventh, still apply it. *See United States v. Smith*, 869 F.2d 348, 351 (7th Cir. 1989).

ineffective in permitting him to stipulate to being a sexually violent person, *id.* at 10–11; (3) that his appellate counsel had been ineffective by failing to brief some issues, *id.* at 11–15; and (4) that the trial court's erroneous acceptance of his stipulation had deprived it and the appellate courts of subject-matter jurisdiction, *id.* at 15–18. On January 28, 2015, the Illinois Supreme Court denied the petition for leave to appeal. Sup. Ct. Denial, Answer Ex. F., ECF No. 17-4.

Years earlier, on February 24, 2010, Walker had also filed a pro se petition under 735 ILCS 5/2-1401, which permits an Illinois court to offer relief from its final judgments, while his civil commitment proceedings were still ongoing. This was after he had stipulated to being a sexually violent person and sought to withdraw the stipulation, but before the Illinois circuit court's dispositional hearing in March 2013. Mot. Relief J., Postconviction Appeal App'x A-18–A-21, Answer Ex. G, ECF No. 17-4. [4] Walker had argued (1) that his adjudication as a sexually violent person violated his right to due process because it was based on discredited scientific methods and upon fabricated or suppressed evidence, (2) that he had been the victim of prosecutorial misconduct, (3) that he had not forfeited any claims because all of his counsel so far had been ineffective. *Id.* The court had dismissed Walker's petition on the basis that, at that time, the dispositional hearing had not yet occurred and a final judgment had not entered, as required by 735 ILCS 5/2-1401. Apr. 21, 2010 Postconviction Order, Postconviction Appeal App'x A-59–A-60, Answer Ex. G, ECF No. 17-4. This order had been affirmed by the Illinois appellate court. *In re Commitment of Walker*, No. 2-10-0458 (Ill. App. Ct. Jun. 15, 2011), Answer Ex. J, ECF No. 17-5. The appellate court had explained that the SVPCA mandates a four-step process for civil

---

[4] Although, as explained below, Walker's petition under 735 ILCS 5/2-1401 was dismissed because it was *not* a postconviction petition, in the sense that no final judgment existed for it to attack, the Court will, for clarity's sake, cite to the trial and appellate court orders on Walker's petitions as "Postconviction Order __" and "App. Ct. Postconviction Order __."

6

commitment proceedings against sexually violent people: a petition by the state, a determination by a court of probable cause, a finding of fact by court or jury that a person is sexually violent, and finally, a commitment order pursuant to a dispositional hearing. *Id.* at 3–4. Because "an adjudication that a person is an SVP . . . is interlocutory to a commitment order," *id.* at 6, and the trial court had not yet entered a commitment order in Walker's commitment proceeding, the appellate court had agreed with the court below that Walker's petition for postconviction relief was premature. *Id.* at 8. The appellate court's order entered on June 15, 2011.

On January 29, 2016, a year and a day after the Illinois Supreme Court denied his petition for leave to appeal, Walker filed his § 2254 petition with this Court.

## DISCUSSION

### I. Legal Standard on a 28 U.S.C. § 2254 Petition

Section 2254 grants district courts jurisdiction to consider petitions for habeas corpus by people in custody pursuant to the judgment of a State court, on the grounds that they are in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed several limits on the situations in which a habeas petitioner may obtain relief under § 2254. An applicant must exhaust the remedies available in state courts, unless there is no corrective process available. 28 U.S.C. § 2254 (b). This means that an applicant must have presented a state's highest court with "the opportunity to correct alleged violations of prisoners' federal rights" by raising the same claims on the basis of the same facts through at least a full round of direct appeal. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to

7

the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). And any claim that *was* adjudicated on the merits in state court cannot be granted unless the adjudication was contrary to or involved an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* at § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Furthermore, even if a state court decides a question of federal law, federal courts cannot review that determination if the decision of the state court "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This means that not only must a § 2254 petitioner exhaust all available state remedies, he must be careful to comply with state forfeiture rules, and raise every claim at every phase of the state court proceedings where failure to do so constitutes forfeiture under state law, because a reviewing federal court will be unable to consider such claims. "Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996) (citing *Coleman*, 501 U.S. at 729–44). A narrow exception to this forfeiture rule exists when a federal habeas petitioner can show both cause why he did not raise the issue in the way required by state law, and prejudice for not having done so. *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009). Ineffective assistance of counsel in violation of one's Sixth Amendment rights is a commonly asserted cause

8

for excusing a forfeiture, although "the assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).

II. **Analysis**

Walker raises several arguments before this Court, many overlapping or outright duplicative. He argues:

(1) that his trial counsel was ineffective for:

    a. failing to prevent the state from withholding evidence and failure to discover witnesses to testify on Walker's behalf, Petition 1-1:1[5];

    b. failing to challenge the state's use of a discharge evaluation written by "unqualified clinical personnel" (he must mean Drs. Quackenbush and Wood) and those personnel's reliance on "fraudulent" evaluations and "outdated" risk tables, *id.* at 1-1:1;

    c. allowing Walker to stipulate to being a sexually violent person and then failing to move to withdraw that stipulation, *id.* at 1-1:3–4;

    d. failing to reject and replace Baron, Walker's court-appointed expert, *id.* at 1-1:6;

    e. causing delay in the eventual filing of Walker's motion to withdraw the stipulation, *id.* at 1-1:9–1-2:1;

---

[5] Walker filed his petition as multiple pages from the AO's form habeas application interleaved with handwritten extensions, and they were filed in the CM-ECF system as an initial filing followed by multiple exhibits, making reference to pages in the Petition by page number difficult. The Court will therefore refer to pages in the petition by the ECF number followed by a colon and the CM-ECF system's automatically generated page number.

(2) that his appellate counsel was ineffective for:

   a. raising "pretentious and pseudo arguments on appeal(s)" and failing to raise the arguments that he wanted, *id.* at 1-2:2–4;

   b. failing to argue specifically that the trial court's acceptance of his stipulation had rendered its judgment void, *id.* at 1-2:5–6;

   c. failing to identify the standard of review applicable to one of his arguments, *id.* at 1-2:7;

   d. failing to argue that the trial court had inadequately admonished Walker before accepting his stipulation, *id.* at 1-3:1;

(3) that the trial court violated his rights to due process and effective assistance of counsel by accepting his stipulation and not allowing him to withdraw it, and by refusing to replace his appointed counsel, *id.* at 1-3:2;

(4) that the trial court violated his Sixth and Fourteenth Amendment rights rejecting his allegations of ineffective assistance of counsel, *id.* at 1-3:3–4;

(5) that the trial court civilly committed him pursuant to his stipulation and without a trial in violation of his right to equal protection of the law, *id.* at 1-3:4–5;

(6) that he has been held without process since July 8, 2008, *id.* at 1-3:5–7;

(7) that false evidence was offered against him in violation of his due process rights, *id.* at 1-4:1–2

(8) and that the appellate court lacked jurisdiction over his appeal, *id.* at 1-4:3.

Respondent concedes that Walker has exhausted his opportunities to raise these claims in Illinois court, but argues that most of Walker's arguments have been defaulted. Respondent

reasons that all of Walker's arguments, with the exception of (1)c (trial counsel ineffective for allowing Walker to stipulate) and 3 (Walker's Sixth and Fourteenth Amendment rights violated by trial court's acceptance of the stipulation), were presented to the Illinois Appellate Court in Walker's failed 735 ILCS 5/2-1401 petition, and that they are defaulted both because Walker did not seek leave to appeal this denial to the Illinois Supreme Court, Answer 13, and because, in ruling his petition untimely, the appellate court dismissed the petition on adequate and independent state grounds, *id.* In the alternative, and with respect to Walker's remaining arguments, Respondent submits that people civilly committed under the SVPCA do not have a Sixth Amendment right to counsel, and that even if they do, Walker's wasn't violated. *Id.* at 16–19. Respondent further submits that accepting a stipulation in a commitment proceeding under the SVPCA doesn't violate clearly-established Supreme Court precedent, and thus doesn't warrant relief under § 2254. *Id.* at 19–21. Respondent further asks that none of Walker's claims be certified for appeal. *Id.* at 21.

### a. Respondent's Waiver Argument

The Court is unpersuaded by Respondent's argument that Walker procedurally defaulted any claims by raising them prematurely under 735 ILCS 5/2-1401, because raising them in this way did not constitute default or waiver under Illinois law.

Section 2-1401 is "a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren Cty. Soil & Water Conservation Dist. v. Walters*, 32 N.E.3d 1099, 1105 (Ill. 2015). Such proceedings "constitute[] an independent and separate action from the original action and must be supported by affidavit or other appropriate showing for matters not in the record." *Id.* (citing 735 ILCS 5/2-1401(b), (d)).

11

When Walker filed his petition in 2010, there existed no final order for him to attack. This was because, as the Illinois trial and appellate courts explained, while the SVPCA mandates a trial to determine whether a person is sexually violent within the meaning of the Act, such a determination is "is interlocutory to a commitment order under Section 40." 725 ILCS 207/35(g). Section 40 requires a court to consider several factors in determining whether to conditionally release a person, or confine them to a secure facility. *Id.* 207/40. Thus, Walker's commitment after his stipulation in lieu of a trial on the merits, but before his dispositional hearing, was "nothing more than an acknowledgment of the continued effect of the section 30 order [finding probable cause that Walker was a sexually violent person]." App. Ct. Postconviction Order 7, ECF No. 17-4; *see* Postconviction Order 2 ("Since there has been no Dispositional Hearing held, i.e. a final and appealable order, Respondent has no grounds to file said Petition.").

Thus, although the trial court expressly denied Walker's petition, *see id.*, its denial had no preclusive effect on Walker's ability to raise the claims contained in the petition, either on direct appeal or, if appropriate, in a later petition under 735 ILCS 5/2-1401. *See* App. Ct. Postconviction Order 8 ("[T]his court would have the power to consider the propriety of the trial court's ruling on [Walker's motion to withdraw his stipulation] if respondent files an appeal from the final judgment under section 40."). The Court can see no reason why the trial court's denial of Walker's petition, which essentially operated as a dismissal without prejudice because the claim was not yet ripe, should have in any way impaired his ability to bring those claims again, once final judgment in his commitment proceedings had entered under 725 ILCS 207/35. *See DeLuna v. Treister*, 708 N.E.2d 340, 344 (Ill. 1999) (explaining that res judicata bars refiling of action previously adjudicated on the merits between the same parties or their privies and involving the

same claims). Certainly, Respondent points to no provision of Illinois law that would result in Walker's having forfeited claims dismissed because prematurely brought. Since there is no adequate and independent basis in Illinois law upon which Walker's arguments in his 735 ILCS 5/2-1401 petition must be deemed forfeited, the Court is not prevented by anything in Walker's state-court petition from considering his claims here. *See Hogan*, 74 F.3d at 146.

### b. Right to Effective Assistance of Counsel in SVPCA Proceedings

Respondent's argument that no right to the effective assistance of counsel exists in Illinois commitment proceedings covers most of Walker's claims. Claims (1), (2), part of (3), and (4) all fail if Walker had no right to the effective assistance of counsel at his commitment proceedings, because all of these claims allege that counsel was ineffective for taking or not taking some action, and that the trial court or appellate court erred in not accepting Walker's claims that these actions were ineffective. And thus, necessarily, all of these claims would require this Court to find that the Illinois Appellate Court applied federal law or the Constitution unreasonably when it found that his trial counsel was not ineffective,[6] or that the Illinois Supreme Court did so in declining to disturb the order of the appellate court, and in declining to consider the argument Walker presented that his appellate counsel had been ineffective. That is to say, these claims fall under § 2254(d)(1)'s limitation of habeas relief to decisions "contrary to" or "involv[ing] an unreasonable application of" the law. *Cf. Harrington v. Richter*, 562 U.S. 86, 101 (2011) (explaining that, where a right to counsel exists, directly-reviewing courts determine whether

---

[6] Illinois guarantees those who are civilly committed a right to effective assistance of counsel identical to the constitutional standard applied to ineffective assistance of counsel in criminal matters. A person seeking to show their appointed counsel in a commitment proceeding was ineffective must, that is, show that counsel's performance fell below an objective level of reasonableness, and that the outcome of the proceedings would have been different but for counsel's unprofessional error. *In re Commitment of Dodge*, 989 N.E.2d 1159, 1167–68 (Ill. App. Ct. 2013). The appellate court in Walker's case applied this standard, App. Ct. Order 23, and found trial counsel not ineffective.

counsel was prejudicially ineffective, and federal courts reviewing their determinations under AEDPA determine whether that decision was "unreasonable" under § 2254(d)(1)). Respondent argues that because the SVPCA is civil in nature, constitutional rights that apply in criminal proceedings, like the right to effective assistance of counsel, did not apply to Walker, and his claims on the basis of having received ineffective assistance must fail. As the Court will explain, Respondent is correct.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This means that criminal defendants have the right to the effective assistance of counsel at all critical stages of criminal proceedings. *Harrington*, 562 U.S. at 101. In order to show that counsel's representation was ineffective, a criminal defendant must show both that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

By its terms, the Sixth Amendment applies to "all criminal prosecutions." Two Supreme Court cases have discussed whether and how constitutional rights applicable in criminal proceedings also apply in civil proceedings that result in a person's detention. The first, *Allen v. Illinois*, 478 U.S. 364 (1986), dealt with a related Illinois statute, the Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/1.01–12.[7] The question presented to the Court was whether proceedings under the SDPA, which is analogous to the SVPCA, were "criminal" within the meaning of the Fifth Amendment's protection against compulsory self-incrimination. 478 U.S. at

---

[7] The SDPA, unlike the SVPCA, applies to people who suffer from a mental disorder and have a propensity for the commission of sex offenses, but who have not necessarily been convicted of a sexually violent offense. 725 ILCS 205/1.01.

365. The Court determined that they were not, reasoning that the Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a witness against himself," did not apply to proceedings which by express statutory provision were civil in nature, and which did not have the punitive features of criminal sentencing regimes. *Id.* at 368–69. The Court observed that "Illinois has expressly provided that proceedings under the Act 'shall be civil in nature,'" *id.* at 368 (quoting Ill. Rev. Stat., ch. 38, ¶ 105-3.01 (1985)), and that the SDPA's requirement that a person be detained and treated only so long as they were dangerous fundamentally distinguished its aims from the punitive and deterrent goals of the criminal law, *id.* at 369–70.

In *Kansas v. Hendricks*, 521 U.S. 346 (1997), the Court considered Kansas's Sexually Violent Predator Act, Kan. Stat. Ann. § 59-29a01 (1994), which, like the SVPCA, provided for civil commitment of persons "convicted of or charged with a sexually violent offense," *id.* § 59–29a02(a), who also had a "mental abnormality," *id.*, that made them likely to engage in acts of sexual violence. The Court had to determine whether the Kansas law implicated the Constitution's ban on double jeopardy or ex post facto lawmaking. *Hendricks*, 521 U.S. at 360–61. The Court determined that neither was implicated because the proceedings authorized by the law were not criminal in nature. *Id.* at 360–69. The Court agreed with *Allen* that "[t]he categorization of a particular proceeding as civil or criminal 'is first of all a question of statutory construction.'" *Id.* at 361 (quoting *Allen*, 478 U.S. at 368). Like the SDPA, the Kansas statute described itself as civil in nature. *Hendricks*, 521 U.S. at 361. And like the SDPA, the Kansas statute "[did] not implicate either of the two primary objectives of criminal punishment: retribution or deterrence." *Id.* at 361–62. The Court explained:

15

> The Act's purpose is not retributive because it does not affix culpability for prior criminal conduct. Instead, such conduct is used solely for evidentiary purposes, either to demonstrate that a "mental abnormality" exists or to support a finding of future dangerousness. . . .
>
> . . .
>
> Nor can it be said that the legislature intended the Act to function as a deterrent. Those persons committed under the Act are, by definition, suffering from a "mental abnormality" or a "personality disorder" that prevents them from exercising adequate control over their behavior. Such persons are therefore unlikely to be deterred by the threat of confinement.

*Id.* at 362–63.

No case exists announcing a constitutional right to counsel in civil commitment proceedings. *See, e.g.*, *Huston v. Smith*, No. C 13-4063-MWB, 2016 WL 146493, at *8 (N.D. Iowa Jan. 12, 2016) ("Neither [petitioner] nor his habeas counsel has cited me any United States Supreme Court decision clearly establishing a federal constitutional right to effective assistance of counsel in civil commitment proceedings."). Nor has the Sixth Amendment ever been found by the Supreme Court to apply to civil commitment proceedings. *See Greenfield v. Dep't of Corr.*, No. CIV.A. 09-1969 JLL, 2011 WL 3203730, at *7 (D.N.J. July 27, 2011) ("Because the Sixth Amendment right to counsel, by its express terms, applies only to criminal proceedings, Greenfield has no Sixth Amendment right to effective assistance of counsel in a civil commitment proceeding."). Indeed, the relevant features of the SVPCA, when compared to the laws under review in *Allen* and *Hendricks*, strongly suggest that, if it considered the question, the Supreme Court would find that the Sixth Amendment does not apply to SVPCA commitment proceedings. Like the laws in *Allen* and *Hendricks*, the SVPCA provides that "[t]he proceedings under this Act shall be civil in nature." 725 ILCS 207/20. And like those statutes, the SVPCA does not provide for a definite period of incarceration on the basis of an offense committed; rather, it provides for treatment and periodic reexamination to determine whether a person is sufficiently rehabilitated to

be released, *id.* 207/55(a). Its aims thus cannot be said to be punitive. And, like the Kansas and Illinois statutes, it applies only to those who suffer from, "a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence," *id.* § 207/5(f), and thus cannot be said to be meaningfully deterrent in its aims.

There exists no clearly established right, under federal law or the Constitution, to the effective assistance of counsel in civil commitment proceedings pursuant to the SVPCA. Thus, the Illinois Supreme Court's denial of Walker's claims to have received ineffective assistance of counsel at trial and on direct appeal of his civil commitment proceedings was not "contrary to, or involv[ing] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### c. Walker's Due Process Claims

What remains is part of Walker's third claim—namely, that his rights to due process of law pursuant to the Fourteenth Amendment were violated by the trial court's acceptance of his stipulation, and the trial court's subsequent refusal to allow him to withdraw that stipulation. Claims (5), (6), and (7) all, also, essentially repeat the argument that he was committed without sufficient process and is now being detained pursuant to that unlawful commitment. Respondent argues that Walker's arguments rooted in the Fourteenth Amendment must be rejected because "no clearly established Supreme Court precedent prohibits the acceptance of stipulations in civil commitment cases." Answer 19.

The Illinois Appellate Court addressed Walker's due process claims and rejected them. The Illinois Appellate Court determined, and the Illinois Supreme Court declined to disturb the determination, that Walker's stipulation was knowing and voluntary, and thus, that there was "no

17

due process violation here," App Ct. Order 21; *see id.* at 18–23. So too, the Appellate Court determined that Walker received adequate process when the trial court considered and denied his motion to withdraw his stipulation. *Id.* at 25–31. As to the former, the Appellate Court reviewed the admonishments Walker received before stipulating to being a sexually violent person, and noted that "the trial court orally inquired of respondent whether he had gone over the stipulation with his attorney and whether he had any further questions. Thus, the trial court took substantial steps to endure that respondent understood what he was doing . . . ." *Id.* at 21. As to the latter, the appellate court applied the Illinois standard for whether or not a stipulation in a civil matter should be withdrawn, see *Brink v. Indus. Comm'n*, 15 N.E. 2d 491, 492 (Ill. 1938), and determined that the trial court had not violated Walker's rights to due process in denying his request to withdraw the stipulation because he had not, in relying on Witherspoon's later report, made "a clear showing that the matter stipulated is untrue." App. Ct. Order 30 (citing *Brink*, 15 N.E.2d at 492). True, Walker did not label his arguments before the appellate court as federal due process claims. But "hypertechnical congruence between the claims" a petitioner raises at each stage of the proceedings is not required, *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006), and the Illinois Appellate Court clearly determined that Walker had received process that did not fall below federal constitutional minima, both as to the trial court's acceptance of his stipulation, and its refusal to let him withdraw it.

The question for this Court is whether the Illinois Appellate Court's determination that Walker's due process rights were not violated is contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Court finds that the Illinois courts' determination that Walker's due process rights were not

18

violated was not contrary to or an unreasonable application of clearly established federal law. The Supreme Court has never held that stipulations to being a sexually violent person are unconstitutional or unlawful when used in civil commitment proceedings under sexually violent persons commitment acts. On the contrary, federal appellate courts have unblinkingly reviewed and affirmed civil commitment proceedings in which stipulations have been used. *See, e.g.*, *Young v. Murphy*, 615 F.3d 59, 61 (1st Cir. 2010); *Cross v. Harris*, 418 F.2d 1095, 1109 (D.C. Cir. 1969). This makes sense; a stipulation to being a sexually violent person under the SVPCA, with the resultant possible deprivation of a liberty interest, is not per se unconstitutional any more than a criminal defendant's being able to plead guilty to a criminal offense. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969) (holding that in a criminal matter, a guilty plea must be knowing and voluntary in order to satisfy due process). While there may of course be questions about exactly where the constitutional floor for such process may lie when a person stipulates to a condition that may result in their civil commitment, it is plain enough that the Illinois courts which directly reviewed Walker's due process claims did not act contrary to or unreasonably apply any clearly established federal law on the question. Walker's due process claims fail as well.

### d. Other Motions

All of Walker's other motions were contingent on the Court's determination of his petition. Since the court now denies that petition in its entirety, Walker's other motions are moot.

### e. Certificate of Appealability

When a district court "enters a final order adverse to the applicant," it must "issue or deny a certificate of appealability." Rule 11(a), Rules Governing § 2254 Cases. When the district court reaches the merits of a claim, a certificate can only be issued "if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). As to both Walker's ineffective assistance of counsel claims and his due process claims, the Court finds that Walker has not made such a showing. A certificate will not issue for these claims. When the district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," it should issue a certificate if "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Not having denied any of Walker's claims on procedural grounds, the court makes no findings under *Slack*. No certificate shall issue.

## CONCLUSION

Accordingly, Walker's petition for relief under 28 U.S.C. § 2254, ECF No. 1, is DENIED. All the other pending motions, ECF Nos. 22, 24, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 40, 41, 42, and 43 are MOOT. No certificate of appealability shall issue. The Clerk is directed to enter judgment and close the case.

ENTERED:      September 28, 2017

                                                            s/Sara Darrow
                                                            SARA DARROW
                                         UNITED STATES DISTRICT JUDGE